UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JOHN L. NORMAN,

    Plaintiff,

v.                                            Case No.  4:20-cv-437-MW-MJF

DAVID MADDOX, *et al.*,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This prisoner civil rights case is before the court upon Plaintiff Norman's "Application for Temporary Restraining Order and Order to Show Cause for a Preliminary Injunction." (Doc. 31). For the reasons set forth below, the undersigned recommends that Norman's motion be denied.[1]

### I.   BACKGROUND AND PROCEDURAL HISTORY

The background and procedural history of this case are outlined in the undersigned's order dated January 7, 2021. (Doc. 29). This case originated as a joint-prisoner plaintiff action, but the plaintiffs' claims have now been severed into

---

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters and motions for injunctive relief. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

individual actions. (*Id.*). This particular case is Norman's civil rights action under 42 U.S.C. § 1983 against four employees of Apalachee Correctional Institution—Warden Maddox, Captain Parrish, Sergeant Wilkes, and Officer Smith—for their alleged violation of his Eighth Amendment rights. (*See* Doc. 29 at 10; Doc. 25 at 15-17). Specifically, Norman claims that on March 28, 2020, Parrish, Wilkes, and Smith were deliberately indifferent to his safety when they left him in a cell with Inmate Keona Berg, while they knew that Berg was "suicidal and homicidal" and possessed a razor blade. (*Id.*). Norman claims that Maddox was deliberately indifferent to his safety because he became aware of Berg's dangerous mental health condition and lack of treatment, but left Norman in the cell "with a homicidal and suicidal inmate" for several weeks. (Doc. 29 at 10; Doc. 25 at 17).

On January 7, 2021, the undersigned ordered Norman to file an amended civil rights complaint, limited exclusively to those claims, by January 28, 2021. (Doc. 29 at 16).

Norman now has filed a motion for temporary restraining order against the Florida Department of Corrections and several non-parties. (Doc. 31).[2] Norman's

---

[2] Although Norman's introductory paragraph states that he is seeking an injunction against "the Defendants within this action," (Doc. 31 at 1), his specific demand for relief seeks a restraining order against the Florida Department of Corrections and correctional officers at Charlotte Correctional Institution. (*Id.* at 35-36; *see also* Doc. 30 at 1-2 (proposed order)).

motion outlines the history of his criminal case and his applications for postconviction relief, as well as his past and current lawsuits against the Florida Department of Corrections. (*Id*. at 3-18). Norman also presents a running chronology, spanning several years, of alleged constitutional violations perpetrated by various prison officials at various institutions. (*Id*.).

Norman's first claim for injunctive relief, titled "Complaint A," alleges that he was transferred to Charlotte Correctional Institution on September 4, 2020, for the stated reason that he "was a TCU inmate with problems." (*Id*. at 20). Plaintiff fears he will be harmed or killed at Charlotte CI in retaliation for assisting other inmates in filing grievances and lawsuits. (*Id*. at 2, 21-23).

Norman's second claim, "Complaint B," alleges that the State of Florida has "turned a blind eye to Plaintiff's present illegal sentence, in violation of double jeopardy" and that "certain State Departments are working hand and [sic] hand to place the Plaintiff, and the individuals that Plaintiff assists, in harm's way." (*Id*. at 2). Norman claims that the "State of Florida as a whole are illegally detaining the Plaintiff within Manatee County Case 2013CF1926." (*Id*. at 23).

As relief for these claims, Norman asks this Court to issue: (1) a broad restraining order "to prevent Florida Dept. of Corrections Officers and officials from committing continued constitutional violations against the Plaintiff;" (2) a

restraining order against particular officers at Charlotte CI;[3] (3) an injunction "mov[ing] the Plaintiff to a Federal holding facility;" and (4) an order "correct[ing] the Constitutional violation of the illegal sentence within Manatee County Case 2013CF1926." (*Id*. at 35-36).

## II.   DISCUSSION

To establish entitlement to a temporary restraining order ("TRO") or preliminary injunction, a movant must demonstrate:

(1) a substantial likelihood of success on the merits of the underlying claim;

(2) a substantial likelihood of suffering irreparable injury if the TRO/injunction is not granted;

(3) that the threatened injury to the plaintiff outweighs any injury the nonmovant might suffer from the injunction; and

(4) the injunction would not disserve the public interest.

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *In re Gateway Radiology Consultants, P.A.*, ___ F.3d ___, 2020 WL 7579338, at *8 (11th Cir. 2020); *Ingram v. Ault*, 50 F.3d 898, 900 (11th Cir. 1995) (discussing the requirements for issuing a TRO). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of

---

[3] Namely, Colonel Robinson, Lt. Gahrman, Lt. Noriega, Correctional Officer Walter, Correctional Officer Hardin, Major Scarpetty, and Officer Marshall.

persuasion as to the four requisites." *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.,* 887 F.2d 1535, 1537 (11th Cir. 1989); *Bloedorn v. Grubs*, 631 F.3d 1218, 1229 (11th Cir. 2011) (emphasizing that a temporary restraining order or "preliminary injunction in advance of trial is an extraordinary remedy").

The chief function of TROs and preliminary injunctions "is to preserve the status quo" between the parties "until the merits of the controversy can be fully and fairly adjudicated." *Ne. Fla. Chapter of Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1284 (11th Cir. 1990); *see Granny Goose Foods Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974) (discussing TROs); *All Care Nursing Serv. v. Bethesda Mem'l Hosp.*, 887 F.2d 1535, 1537 (11th Cir. 1989); *United States v. State of Ala.*, 791 F.2d 1450, 1457 n.9 (11th Cir. 1986). This necessitates that the relief sought in the motion be closely related to the conduct at issue in the actual complaint. *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994); *Penn v. San Juan Hosp.*, 528 F.2d 1181, 1185 (10th Cir. 1975). Also, the persons from whom the injunctive relief is sought must be parties to the underlying action. *In re Infant Formula Antitrust Litig., MDL 878 v. Abbott Lab'ys*, 72 F.3d 842, 842-43 (11th Cir. 1995) (denying motion for TRO against non-party for lack of subject matter jurisdiction).

Norman's motion for TRO has nothing to do with preserving this court's decision-making power over the merits of this lawsuit. Norman's claims in this suit arise from four officers' alleged deliberate indifference to his safety at Apalachee CI during Inmate Berg's psychological emergency. Norman, however, is no longer confined at Apalachee CI, and has not established a substantial likelihood of suffering irreparable injury at the hands of these Defendants.

Norman's remaining requests for injunctive relief seek to restrain non-parties for conduct wholly unrelated to this lawsuit. Norman seeks to force the State of Florida to "correct" his "illegal sentence;" and he seeks to restrain officers at Charlotte CI from retaliating against him. Norman's assertions supporting these requests are entirely different from the claim of deliberate indifference underlying this lawsuit. Norman's allegations cannot provide the basis for a preliminary injunction in this case.[4]

### III.   CONCLUSION

---

[4] Norman's constitutional challenge to the validity of his criminal conviction can only be brought in a federal habeas petition. *Hutcherson v. Riley*, 468 F.3d 750, 754 (11th Cir. 2006) ("[I]f the relief sought by the inmate would either invalidate his conviction or sentence or change the nature or duration of his sentence, the inmate's claim must be raised in a [Section] 2254 habeas petition, not a [Section] 1983 civil rights action."). Norman's claims of retaliation by prison officials at Charlotte CI may be brought in a new civil rights action filed in the United States District Court for the Southern District of Florida, subject, however, to the provisions of the Prison Litigation Reform act.

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

Plaintiff's motion for temporary restraining order and preliminary injunction (Doc. 31) be **DENIED**.

At Panama City, Florida, this 13th day of January, 2021.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. R. 3-1; 28 U.S.C. § 636.**