UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JOHN L. NORMAN,

    Plaintiff,

v.                                                Case No. 4:20-cv-437-MW-MJF

DAVID MADDOX, *et al.*,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff John Norman, a Florida prisoner proceeding *pro se*, has filed a second amended complaint under 42 U.S.C. § 1983. (Doc. 35). Defendants Maddox, Parrish, Smith, and Wilkes move to dismiss the complaint for failure to exhaust administrative remedies. (Docs. 44, 48).[1] Norman opposes the motion. (Doc. 50, 54). The undersigned recommends that Defendants' motions to dismiss be denied.[2]

---

[1] The remaining Defendant, Assistant Warden Jonathan Hutchins, is in the process of being served. (*See* Doc. 52).

[2] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

I. B<small>ACKGROUND AND</small> P<small>ROCEDURAL</small> H<small>ISTORY</small>

The background and procedural history of this case are outlined in the undersigned's order dated January 7, 2021. (Doc. 29). In short, this case originated in a Florida court. On June 19, 2020, Plaintiff Norman and another prisoner (Inmate Keona Berg) jointly filed suit in the Circuit Court for Leon County, Florida, Case No. 2020-CA-1220, against ten Defendants. (Doc. 1-1, Ex. A at 2-21). At that time, Norman and Berg were incarcerated at Apalachee Correctional Institution ("ACI"). (*Id.*). Their joint complaint asserted a state-law negligence claim and a federal civil rights claim on Berg's behalf, and a federal civil rights claim on Norman's behalf. (*Id.*). The claims arose from an incident that occurred at ACI on March 28, 2020. (*Id.*).

Defendants removed the case to this court on September 8, 2020. (Doc. 1). On January 7, 2021, the undersigned severed Norman's and Berg's claims, and this case became Norman's individual action under § 1983. (Doc. 29). Norman has filed a second amended complaint limited to his individual claims. (Doc. 35).

Norman's second amended complaint names five Defendants: Warden David Maddox, Assistant Warden Jonathan Hutchins, Captain Parrish, Officer D. Smith and Sergeant Wilkes (Doc. 35 at 1-3). Each Defendant is sued in his individual and official capacity for violating Norman's rights under the Eighth Amendment. (*Id.* at 3). Specifically, Norman claims that on March 28, 2020, Smith, Wilkes and Parrish

were deliberately indifferent to his safety when they left him in a cell with Inmate Berg, knowing that Berg (1) had declared a psychological emergency which they ignored, (2) was "suicidal and homicidal" and (3) possessed a razor blade. (*Id*. at 6-7, 11-14). Norman claims that Maddox and Hutchins became aware of the situation—and of the continuing risk posed by Norman's confinement with Berg—through grievances both he and Berg filed, but these Defendants failed to respond reasonably to the risk. (*Id*. at 8-10, 15-17). As relief for these constitutional violations, Norman seeks compensatory and punitive damages. (*Id*. at 11).

Defendants Maddox, Parrish, Smith and Wilkes move to dismiss Norman's second amended complaint with prejudice, under Rule 12(b) of the Federal Rules of Civil Procedure, on the ground that Norman failed to exhaust available administrative remedies as required by 42 U.S.C. § 1997e(a). (Docs. 44, 48). Specifically, Defendants assert that Norman "failed to exhaust the required administrative process" because he filed only an informal grievance and did not appeal through all levels of the FDC's grievance procedure, and Norman's single informal grievance was untimely. (*Id*.).

Norman responds that he did not need to appeal because his informal grievance was approved, and that his informal grievance was not time-barred. (Doc. 50).

## II. Discussion

### A. The PLRA's Exhaustion Requirement

The PLRA provides in relevant part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, whether they allege excessive force or some other wrong, and whether they seek injunctive relief, monetary damages, or both. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002).

Exhaustion of available administrative remedies is a mandatory pre-condition to suit. *See Booth v. Churner*, 532 U.S. 731, 739 (2001) ("The 'available' 'remed[y]' must be 'exhausted' *before* a complaint under § 1983 may be entertained.") (emphasis added); *see also Porter*, 534 U.S. at 524-25 ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.").

"[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). As the Supreme Court explained:

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).

*Id*. at 90 (internal quotation marks and citation omitted).

"To determine 'proper exhaustion' in prisoner civil rights actions, courts must look to the requirements of the 'prison grievance system.'" *Gipson v. Renninger*, 750 F. App'x 948, 951 (11th Cir. 2018) (quoting *Woodford*, 548 U.S. at 95). "A prisoner must comply with rules 'defined not by the PLRA, but by the prison grievance process itself.'" *Id*. (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)).

The Florida Department of Corrections provides inmates with a three-step grievance process for exhausting administrative remedies. As the Eleventh Circuit has described it:

> The grievance procedure applicable to Florida prisoners is set out in § 33-103 of the Florida Administrative Code. Section 33-103 contemplates a three-step sequential grievance procedure: (1) informal grievance; (2) formal grievance; and then (3) administrative appeal. Dimanche, 783 F.3d at 1211. Informal grievances are handled by the staff member responsible for the particular area of the problem at the institution; formal grievances are handled by the warden of the institution; and administrative appeals are handled by the Office of the Secretary of the FDOC. See Fla. Admin. Code. §§ 33-103.005–103.007. To exhaust these remedies, prisoners ordinarily must complete these steps in order and within the time limits set forth in §

> 33-103.011, and must either receive a response or wait a certain period of time before proceeding to the next step. See id. § 33-103.011(4).

*Pavao v. Sims*, 679 F. App'x 819, 824 (11th Cir. 2017) (citing *Dimanche v. Brown*, 783 F.3d 1204 (11th Cir. 2015)).

### B.     Procedure for Ruling on an Exhaustion Defense

A failure to exhaust administrative remedies is an affirmative defense that the defendant bears the burden of proving. *See Jones*, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (holding that because failure to exhaust administrative remedies is an affirmative defense, the defendant bears "the burden of proving that the plaintiff has failed to exhaust his available administrative remedies.").

In *Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008), the Eleventh Circuit outlined the procedure district courts should follow when presented with a motion to dismiss for failure to exhaust administrative remedies under the PLRA. The defense of failure to exhaust should be treated as a matter in abatement. *See id*. at 1374. "This means that procedurally the defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." *Turner*, 541 F.3d at 1082 (quoting *Bryant*, 530 F.3d at 1374). Because exhaustion is a matter in abatement, "it

should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant*, 530 F.3d at 1374-75 (citation and internal quotation omitted).

Deciding a motion to dismiss for failure to exhaust administrative remedies involves two steps. *See Turner*, 541 F.3d at 1082. First, the court looks to the factual allegations in the defendant's motion, and those in the plaintiff's response. *See id*. If they conflict, the court accepts the plaintiff's version as true. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*.; *see also Bryant*, 530 F.3d at 1373-74.

If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, "the court proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082 (*citing Bryant*, 530 F.3d at 1373-74, 1376). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id*. Upon making findings on the disputed issues of fact, the court then decides whether, under those findings, the plaintiff has exhausted his available administrative remedies. *See, e.g., Singleton v. Dep't of Corr.*, 323 F. App'x 783, 785 (11th Cir. 2009) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute

does not decide the merits and the parties have a sufficient opportunity to develop the record.") (citing *Bryant*, 530 F.3d at 1376).

C. **<u>Application of the *Turner* Procedure</u>**

The factual allegations in Defendants' motions to dismiss and those in Norman's response do not conflict with regard to the steps Norman took to exhaust his administrative remedies. Defendants assert, and Norman agrees, that Norman filed only one grievance relating to the incident underlying this lawsuit—his informal grievance dated April 27, 2020, which was docketed as grievance number 102-2004-0896. (Doc. 44 at 5 & Dawson Decl. at ¶ 3; Doc. 50 at 2 & Norman Aff.).[3]

Norman's informal grievance read:

> This inmate is on PM status pursuant to grievance 102-2003-0265 and pursuant to 33-602.221(2)(a) the treatment of this inmate shall be the same as near to general population as the individuals [sic] inmate safety and security concerns. This inmate's cellmate has been having suicidal and homicidal thoughts, on March 28, 2020 between 3:00 PM and 6:00 PM a preservation notice was filed in 2003-102-209, Offc Smith used profane language against this inmate's cellmate, he then claimed a pyschological [sic] emergency and screamed he was suicidial

---

[3] Although Norman's second amended complaint alleged that both he and Berg filed a formal grievance dated March 30, 2020, log # 2003-102-209, (Doc. 35 at 8 ¶ 5), Norman's response to Defendants' motion to dismiss concedes that he merely "assisted" Berg in "preparing" that formal grievance. (Doc. 50 at 2). Norman also concedes that the FDC's inmate grievance procedure does not allow inmates to file joint grievances. (*Id*.). Norman filed a copy of Berg's March 30, 2020, formal grievance as an attachment to his original, joint complaint with Berg. (Doc. 1-1 at 16-18). The formal grievance, on its face, confirms what Norman now concedes—that it was an individual grievance filed solely by Inmate Berg. (*Id*.).

[sic] and homicidal and began trying to cut his veins and began to bleed. Offc Smith returned and said "I hear you." The inmate in this inmate's presence began to bleed. Sgt. Witte returned with Offc Smith and saw the inmate bleeding and told this inmate's cellmate "You need to cut deeper and fill the room up with blood," and brought this inmate bunkie a bandaid. This inmate's bunkie told Capt. Parrish and Sgt Witte C.O. Smith he was homicidal and sucidal [sic], and Capt. Parrish seeing the blood laughed and then told both inmates that he was going to place the dorm on strip and shake down the dorm. At that time, this inmate's bunkie was taken out and spoke to by Nurse Moore and told "You will get some emergency care." This inmate conveys this situation as these officers subjected this inmate because the bunkie was homicidal, and his bunkie because he was suicidal and hurting himself, to a failure to protect this inmate and his bunkie, as to CO Smith, Sgt. Witte and Capt. Parrish satisfy this act, as this inmate can provide (1) a substantial risk of serious harm (2) the prison officials deliberate indifference to that risk and (3) causation. Goodman vs Kimbrough 718 F.3d 1325 (11th Cir. 2013). This inmate provides that due to Mental Health's failure to address this inmate's bunkie's mental health issues, this inmate remains suicidal and homicidal, which further supports the Eighth Amendment claim of failure to protect both this inmate as the past actions of the bunkie have and continue to place this inmate in a risk of possible serious harm and the failure to treat the bunkie also places the bunkie in a risk of possible serious harm.

It is a constitutional violation to allow this inmate to be subjected to severe mental health inmates. This inmate asserts that this grievance applies to this inmate's continued subjection to possible homicidal actions of his bunkie, as mental health and security fail to assist this inmate when he snaps and claims psychological emergency. This inmate was woke up by the screams of another inmate within 42-108 while he was trying to hang himself. This violates this inmate's right to normal living standards as Y2 is inhuman conditions, which violates Farmer vs Brennan 114 S. Ct. 1970 (1994) because the mental health care is inadequate "grossly," this violates Russell vs Johnson 376 F.3d 373 (5th Cir. 2004) and because security staff C.O. Smith, Sgt. Witte, Capt. Parrish, saw this inmate's bunkie trying to harm himself and he stated "I am homicidal and suicidal" which placed the bunkie and this inmate in harms [sic] way, and violates the Constitution for a failure to

> protect this inmate John Norman, and mental health staff has not brought the bunkie to the Doctor, or placed him in TCU for cutting himself and screaming psychological emergency multiple times since that time, places this inmate and this inmate's bunkie in a failure to protect constitutional violation, as at any time this inmate's bunkie could snap and either harm himself or harm this inmate.
>
> This grievance unequivocally is a grievance based upon this inmate John Norman's subjection to continued constitutional violations within Y2.
>
> Remedy: For this institution to place this inmate in as near close as possible environment representative of that of general population 33-602.221(2)(a).

(Doc. 1-1 at 14-15).[4]

There is no factual dispute that Defendant Assistant Warden Hutchins responded to the grievance on May 1, 2020, stating:

> A review was completed. All staff denied placing you or your cellmate in harms [sic] way. If you feel you need to see Mental Health I will get you help. Please be patient and let the process work.
>
> cc: Medical
>
> . . . .
>
> Based on the above information, your grievance is Approved. If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.

(Doc. 35 at 14).

---

[4] Norman's original complaint attached a complete copy of this informal grievance. (Doc. 1-1 at 14-15). Norman's second amended complaint attached only the first page of the informal grievance. (Doc. 35 at 18).

Under these facts, Norman has exhausted his available administrative remedies. Because Norman's informal grievance was addressed and approved, he was not required to submit any further grievances about the March 28, 2020, incident and his continued confinement with Berg. *See Harvard v. Inch*, 411 F. Supp. 3d 1220, 1248 (N.D. Fla. 2019) (holding that Florida prisoner, whose informal grievance was approved by the defendants, "did not need to appeal his grant in order to exhaust his administrative remedies."); *Williams v. Dep't of Corr.*, 678 F. App'x 877, 881 (11th Cir. 2017) (holding that a plaintiff is not required to appeal from a grant of relief to exhaust his administrative remedies).

Defendants' alternative procedural default argument—that Norman's informal grievance did not satisfy the exhaustion requirement because it was untimely—is unavailing as well. In *Whatley v. Warden, Ware State Prison*, 802 F.3d 1205 (11th Cir. 2015), the Eleventh Circuit held: "We join our sister Circuits in holding that district courts may not find a lack of exhaustion by enforcing procedural bars that the prison declined to enforce." *Id*. at 1213-14. Defendant Hutchins did not reject Norman's informal grievance as untimely; rather, he addressed the grievance on the merits. This court may not enforce a procedural bar that Hutchins declined to enforce.

Defendants have not carried their burden of establishing that Norman failed to exhaust available administrative remedies. Accordingly, their motions to dismiss should be denied.

### III. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1. Defendants Maddox, Parrish, and Smith's motion to dismiss (Doc. 44) be **DENIED**.

2. Defendant Wilkes's motion to dismiss (Doc. 48) be **DENIED**.

3. The District Court order Defendants Maddox, Parrish, Smith and Wilkes to file an answer by a date certain.

4. The District Court remand this case to the undersigned for further proceedings.

At Panama City Beach, Florida, this 27th day of April, 2021.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not**

**control.** **An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. R. 3-1; 28 U.S.C. § 636.**